## John Lininger, Appellant, v. J. L. Latshaw et al.

[Marked to be reported.]

*Evidence—Question for jury.*

While several suits were pending against defendants, several plaintiffs in the suits joined in a written agreement by which an extension of time was granted to defendants so that a compromise might be effected; the contract to be binding only when signed by all of the plaintiffs.  O, one of the plaintiffs signed for L, another of the plaintiffs.  A compromise was subsequently effected by which the defendants were to pay fifty per cent of the claims.  O received the percentage of L's claim, and paid it over to L, who accepted it without objection.  L subsequently disavowed O's authority to act for him, and pressed his suit against defendant.  At the trial O testified that when he signed the paper for L he presumed he had authority; that he would not have signed it without authority, that his recollection was that he had authority.  One of the defendants testified that during the negotiations for compromise L constantly referred to O as the person who was acting for him, and stated that if O signed for him it would be satisfactory.  L denied this testimony, and asserted that he had given no authority to O to sign for him, and that the payment made through O was a general payment made on the whole sum due.  *Held*, that the question was for the jury, and it would have been grave error to withhold it from them.

Argued March 11, 1895.  Appeal, No. 451, Jan. T., 1894, by plaintiff, from judgment of C. P. Franklin Co., Feb. T., 1891, No. 186, on verdict for defendants.  Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on promissory note.

At the trial it appeared that defendants were sued as indorsers on a promissory note for $1,750.  The plaintiff offered the note in suit, and having admitted a credit of $1,000 thereon rested.  Defendants answered by offering an agreement of compromise dated February 24, 1891, signed by a number of their creditors, the name of the plaintiff appearing among them.  By this agreement the creditors who became parties thereto bound themselves to release and discharge defendants from all liability upon the obligations which they held against them, on condition that defendants should pay to them fifty per cent of their respective claims within thirty days after the execution of the agreement.

Defendants offered evidence tending to show that plaintiff's name had been signed by John R. Orr, and that Orr was acting as plaintiff's agent in the transaction.  Plaintiff denied that Orr had any authority to sign his name.  The evidence relating to Orr's agency is quoted at length in the opinion of the Supreme Court.

Plaintiff's points were as follows:

"1. The court is respectfully requested to instruct the jury that the evidence of the defendants is insufficient to show that John R. Orr was clothed with authority to sign the composition deed or releases offered in evidence and to make them contracts binding on the plaintiff.  *Answer:* I refuse this proposition. I say to you that the evidence offered by the defendants if believed by you is sufficient to make out authority on the part of Mr. Orr to sign for Lininger." [1]

"2. There is no sufficient evidence in this case to warrant the jury in finding that the terms of the composition contract were complied with by the defendants and that the composition money was paid as stipulated in said contract.  *Answer:* I refuse to affirm that proposition.  I say you may find that the defendants did comply with their contract and did pay the com-

position money as stipulated in the contract.  I say you may find it so, not that you shall so find." [2]

"3. If the jury believe from the evidence that two of the creditors whose names are signed to the composition deed, Mrs. Stouffer and Mrs. Heintzleman, were to receive more that fifty per cent of their claims and this was so understood and arranged with them at the time they signed the composition deed, and they were in fact paid an additional sum, Mrs. Stouffer having been paid in full and Mrs. Heintzleman having been paid a sum considerably in excess of fifty per cent, this is such bad faith on the part of the defendants as avoids the releases set up in this case, and they constitute no bar to the plaintiff's recovery.  *Answer:* I answer that in this way,—such facts as have been recited would avail to set aside the agreement of the 24th of February, A. D. 1891, as against any subscriber thereto who signed it in good faith with all the other subscribers and was not himself a party to any secret or private agreement that he was to get any advantage over his associates.  If the plaintiff, Lininger, entered into this agreement with a second contract that he was to receive something in addition to the pro rata stipulated for in the written agreement, such contract would be a fraud upon the other creditors and he cannot be heard to say that a like fraud which he himself has been practicing in the same transaction shall operate to relieve him from the contract of composition.  He could not avail himself of his own fraud in the matter, and it would be just as inequitable to allow him to be benefited by the failure of others which was in all respects like his own and stands so clearly related to it.  I do not say such fraud was attempted by Lininger.  This answer has regard to the defendants' contention.  They have offered evidence to show that Lininger, by his agent, Orr, did stipulate by private agreement that he should receive something more than fifty per cent in advance of signing the contract.  If you shall find the facts with respect to this to be as the defendants contend then the payment to Mrs. Stouffer and Mrs. Heintzleman, as stated in this point, would not relieve Lininger from his agreement to compromise. [3]

The court charged in part as follows :

"It was in excess of fifty per cent of the claim and was not credited on the note.  You may take that circumstance into

consideration in connection with the other evidence. If it was not paid under the contract why was it not credited on the note?" [4]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*W. Rush Gillan, W. U. Brewer* with him, for appellant.—It is error to submit a question to the jury of which there is no evidence: Lower & Barron v. Clement, 25 Pa. 68.

*J. D. Ludwig, H. Gehr* and *J. M. McDowell* with him, for appellees.

OPINION BY MR. JUSTICE GREEN, July 18, 1895:

The jury having found that Orr did have the authority of Lininger to sign the composition deed for him, the only question before us, is, whether there was evidence, more than a scintilla, of the fact of such authority, to warrant the court in submitting the question to the jury. This can only be determined by a review of the testimony delivered on the trial.

The composition agreement was executed on February 24, 1891. Prior to that time several suits had been brought and were pending against the present defendants in the common pleas of Franklin county, of which this action was one. On February 23, 1891, the plaintiffs, in these actions, signed an agreement in writing among themselves, reciting that whereas several suits had been brought against the defendants, all returnable on that day, and that it was to the interest and advantage of all parties concerned that a compromise and adjustment of the indebtedness for which the suits were brought should be effected, and that further time was required by the defendants to effect a compromise and adjustment, and thereupon the parties agreed that no judgment should be taken, or asked for against the defendants until Saturday the 28th day of February, 1891, and it was agreed the contract should be binding only when signed by all the plaintiffs or their attorneys. This agreement was signed by John R. Orr "for Camp & Co. and John R. Lininger," and it was in fact adhered to and carried out literally. The next day the agreement of composition was

executed, by which it was stipulated and agreed that the plaintiffs in the said actions would release and discharge all of the defendants from all liability on all their obligations or notes given, for, or on behalf of, the Taylor Manufacturing Company, upon condition that fifty per cent of the amount due, with interest, should be paid within thirty days. This agreement was under seal, and so far as this plaintiff was concerned it was signed, " John Lininger, Per J. O. R."

The other signatures were made by attorneys for the several parties except John R. Orr and Ephraim Hiteshew, who each signed for himself. This agreement also provided that no judgments were to be taken within thirty days, and it was literally performed and carried out by the several plaintiffs in the pending action.

It appears therefore that both these agreements were performed according to their terms, and so far as Lininger is concerned he was affected by signatures in both, made by Jno. R. Orr for him. Within the thirty days the moneys which were to be paid within that time were actually paid, and amongst the rest the sum of one thousand dollars, which had been paid by the defendants to Orr, for Lininger, was paid by Orr to Lininger though after the thirty days had elapsed. This amount was somewhat more than fifty per cent of the amount due Lininger, but the money was accepted, and kept, by him. Apparently the conclusion is irresistible that the money was paid to Orr, and by Orr to Lininger, in execution of the agreement of February 24th. The plaintiff however denies that it was so paid or received, and this denial raises the question whether it was so paid and received. It is so very difficult to understand, even upon the plaintiff's evidence, as to how and why it was paid if not in pursuance of the agreement of composition, that we think the mere fact of its payment in the manner, and at the time and in the circumstances in which it was paid, was much more than a mere scintilla in support of the contention of the defendants. The plaintiff is obliged to allege, and does allege, that it was a mere general payment on account of the whole sum of the note held by him. But he is entirely unsupported as to this and it is simply incredible that it was so paid.

An issue having been raised on the direct question of Orr's authority to sign for Lininger, considerable testimony was taken

on that subject. Mr. Orr was himself examined. He was asked whether he had signed the paper for Lininger and he said, " Yes, sir, I signed that myself for John R. Orr, for Camp & Co. and John Lininger. Q. That is the plaintiff in this suit? A. Yes, sir. Q. (Paper marked ' C.') State whether or not you wrote Mr. Lininger's name there and your own as attorney? A. I signed Mr. Lininger's name there. J. R. O., that is my hand writing. . . . Q. Did you represent Mr. Lininger at this time this money was paid? A. I took the money for him and paid it over. . . . Q. Do you say you had no authority to sign Lininger's name? A. I suppose I had authority. . . . By the Court: Why not put the question to the witness—Had you authority to sign this paper at the time you signed it? The witness: A. I presume I had. By Mr. Ludwig. I show witness the second paper. A. I would not sign this paper without authority. Q. After that you received $1,000 from Mr. Rhoadarmer and paid it over to Mr. Lininger? A. Yes, sir. . . . Q. Witness' attention called to paper ' C.' A. That is my signature, J. R. Orr for John Lininger. Q. Did you have authority to sign that paper? A. My recollection is that I had authority. I can't recall the particulars now. Q. Did you tell Mr. Lininger that you had signed it? A. Inasmuch as I had dismissed the thing from my mind I looked upon this paper as far as Mr. Lininger was concerned as null and void. I informed him very soon after. He was at my office frequently; we talked over it daily. I told him I had signed that paper. Q. He did not object to it? A. Not then, no, sir. I can't recall what he did. . . . Q. As I understand you, you say you had some kind of authority? A. He was to see me frequently, we talked over the compromise frequently. I would suppose I must have had some kind of authority. I was not his attorney. I would not sign it without some condition to it. . . . By the Court: Interrogate the witness as to paper marked ' C.' Paper marked ' C ' shown witness. State whether or not you signed that? A. Yes, sir. John Lininger Per J. R. O. Q. Did you have authority? A. As I said before I have no recollection about it, of what my authority was at that time. I presume I had some authority. By the Court: Did you at the time regard it as sufficient to authorize you to sign it? A. Yes, sir. To-day I presume it was. My impression is that it was subject to Mr. Lininger's

approval and certain conditions.   Q. What are we to under-
stand by Mr. Lininger's approval and conditions?   A. My rec-
ollection is that I signed it and Mr. Lininger was to ratify it.
Q. What was your authority?   A. At this late date I can't tell.
Q. Are you satisfied that when you signed it you had authority?
A. On general principles I would not have signed it without
authority."

In addition to the foregoing William E. Tolbert one of the
defendants was examined.   After testifying that he had taken
an active part in the settlement of the claims, and that he had
personal knowledge that they were all settled in pursuance of
the agreement and within the time fixed, and that some settle-
ments were made at more than fifty per cent, he was asked
about his conversations with Lininger in regard to the com-
promise, and about Lininger's referring him to Orr as acting
for him.   " Q. I wish you to state whether you had any con-
versation with John Lininger about this note after its maturity
and about this compromise?   A. Yes, sir, I had several conver-
sations with him.   Q. In these conversations did or did he
not refer you to Mr. Orr?   A. Yes, sir, that was the wind up
of every conversation we had, I made it a point to hunt him
up.   I sometimes saw him down at the Montgomery House or
Zullinger's.   I found he referred me right along to Mr. Orr.
He told me that Mr. Orr was competent to make the settlement
and if he would sign for him it would be satisfactory.   Q. Where
and when did Mr. Lininger tell you that if John Orr would
sign for him it would be satisfactory?   A. Every conversation
we had I think . . . . Mr. Lininger never pretended that Mr.
Orr was his attorney?   A. He would invariably tell me to go
to Mr. Orr, that it would be satisfactory anything he would do.

He further testified to agreeing with Orr to pay $200 more
to Lininger, making it $1,200 in all: that the $1,000 was paid
within thirty days and that when he subsequently offered to
pay the $200 it was refused.

There are other facts and circumstances in the case tending
strongly to support the theory of the defendant, but it is not
necessary to recur to them.   The testimony already quoted is
far more than enough to warrant the submission of the case to
the jury.   It is true that Lininger denied the conversations
testified to by Tolbert, and asserted that he had never given

authority to Orr to sign for him, but that testimony only raises a question of veracity of the witnesses which could only be decided by the jury.   Moreover the leading and really undisputed facts remain that Orr did act for Lininger, that he told him he had signed this paper for him, that Lininger did know all about the compromise, that he had brought a suit on his note and did suspend action on it, not only for thirty days but for a long time thereafter, that Orr did receive the $1,000 from one of the defendants to be paid to Lininger and that he did pay it to Lininger who received it, and kept it.   It is asking too much for human credulity to believe that all this was done without any knowledge on the part of Lininger that the money was paid under the agreement and received by him as it was paid.   It would have been grave error to withhold the case from the jury, and it was the clear duty of the court below to submit it to them, as was done.   The charge was perfectly fair and correct in every respect.   The third and fourth assignments of error are not pressed in the argument and in our opinion they are not sustained.

Judgment affirmed.